# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

MONARCHY REAL ESTATE ACQUISITIONS &
HOLDINGS, LLC, *a Nevada corporation, and
its subsidiaries,* MONARCHY RUSH NO MORE
RV RESORT, LLC, *a Nevada corporation*,
MONARCHY FOUR CORNERS RESORT, LLC,
*a New Mexico corporation*, MONARCHY RED
RAYDER RV PARK, *a Nevada corporation*,
MONARCHY COUNTRY RV PARK, LLC,
*a New Mexico corporation*,
MONARCHY COUNTRY ESTATES, LLC,
*a New Mexico corporation*, MONARCHY
SMOKY MOUNTAIN RV RESORT &
GLAMPGROUNDS, LLC, *a Nevada Corporation,* and
GENE CHAVEZ, as Trustee for KEEPER OF THE
KEYS SPENDTHRIFT TRUST,

      Plaintiffs,

      v.                            No. 1:23-cv-00493 KWR/JFR

RYAN VANCE, *individually and as a
Corporate officer of,* AVANCE GROUP USA,
*d/b/a* AVANCE FINANCIAL, LLC, *a New Mexico
corporation,* TODD HOHMANN, *qualified manager
of Avance Group USA,* VELOCITY MORTGAGE CAPITAL,
*a foreign corporation,* US BANK, NA, *a foreign corporation,*
FIRST NATIONAL BANK OF COFFEE COUNTY,
NORTH AVENUE CAPITAL, LIVE OAK BANK,
HARD MONEY LOAN SOLUTIONS, UNITED WHOLESALE
MORTGAGE, and ROCKET MORTGAGE,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon the following eight motions to dismiss, as

well as a motion for extension of time to file a reply:

- Defendant Live Oak Bank Company's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 10);

- Defendant First National Bank of Coffee County's Motion to Dismiss under Fed. Rules Civ. P. 12(b)(2) and 12(b)(6) or in the Alternative Motion for More Definite Statement (Doc. 12);

- Defendant Rocket Mortgage, LLC's Motion to Dismiss for Failure to State a Claim and Supporting Brief (Doc. 23);

- Defendant Ryan Vance's and Avance Group, USA's Motion to Dismiss Plaintiff's First Amended Complaint or in the Alternative as to Any Surviving Claims, a More Definite Statement (Doc. 25);

- Defendant Todd Hohmann's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 26);

- Defendant U.S. Bank, NA's Motion to Dismiss and Brief in Support (Doc. 36);

- Defendant North Avenue Capital's Motion to Dismiss and Brief in Support (Doc. 46);

- Defendant United Wholesale Mortgage's Motion to Dismiss Plaintiff's First Amended Complaint, or in the Alternative for a More Definite Statement and Brief in Support (doc. 63); and

- Defendant United Wholesale Mortgage's Motion for Leave to File Late Reply in Support of Motion to Dismiss (Doc. 78).

This matter arises from several failed real estate transactions. Plaintiffs sued their mortgage broker and several potential lenders after they did not obtain the necessary financing to acquire or refinance properties. Although this case mostly involves state law claims, it was removed to this Court under federal question jurisdiction after Plaintiffs amended their complaint to add a federal

RICO claim.  No party has asserted that diversity jurisdiction exists.  After removal, all Defendants moved for dismissal, asserting either a lack of personal jurisdiction or failure to state a claim.

For the reasons stated below, the Court finds the motions to dismiss well taken in part, and therefore **GRANTED IN PART**.  The Court will dismiss the claims against Defendants Live Oak Banking Company and First National Bank of Coffee County without prejudice for lack of personal jurisdiction.  Moreover, the Court dismisses the federal RICO claim (Count VIII) as to the remaining Defendants.  As no federal claims remain in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and remands the remaining state law claims to the Second Judicial District Court, Bernalillo County, New Mexico.

## BACKGROUND

Plaintiffs are seven related LLCs and Gene Chavez (as trustee).  Gene Chavez is allegedly a controlling member of the LLCs.  Plaintiffs sought commercial loans to acquire or refinance investment properties.  Doc. 1 at ¶ 5 (first amended complaint).  Plaintiffs retained Defendant Ryan Vance and his mortgage brokerage Avance Group USA to assist them in applying for and obtaining commercial loans.  *Id.* at ¶ 6.  Defendant Todd Hohmann was an employee of Avance financial.  *Id.* at ¶ 2.  Plaintiffs allege that all of the potential loans failed to close or were denied by various lender defendants.  Plaintiffs assert that either the broker or the lenders failed to provide required disclosures to Plaintiffs.

On December 16, 2022, Plaintiffs filed a complaint in New Mexico state court against Ryan Vance and Avance Group USA.  Through discovery, Plaintiffs obtained information identifying potential lenders.

On April 28, 2023, Plaintiffs filed their First Amended Complaint naming the potential lenders as Defendants, and adding a federal RICO claim. The claims asserted in the First Amended Complaint are as follows:

Count I: Breach of Contract

Count II: Breach of Duty of Good Faith and Fair Dealing

Count III: Violation of the Unfair Trade Practices Act

Count IV: Negligence

Count V: Negligent Misrepresentation/Supervision

Count VI: Fraud

Count VII: Civil Conspiracy

Count VIII: Racketeer Influenced and Corrupt Organizations

Count IX: Promissory Estoppel.

Defendants removed this case pursuant to federal question jurisdiction.  Doc. 1.

## DISCUSSION

**I.**  **Court lacks personal jurisdiction over Defendants Live Oak Banking Company and First National Bank of Coffee County.**

Defendants Live Oak Banking Company ("Live Oak") and First National Bank of Coffee County ("First National") move to dismiss for lack of personal jurisdiction.  *See* Docs. 10, 12.  For the reasons stated below, the Court concludes that Plaintiffs have not established personal jurisdiction over Defendants Live Oak and First National.  Therefore, the claims against those two defendants are dismissed without prejudice.

Defendants Live Oak and First National filed motions to dismiss for lack of personal jurisdiction.  A district court generally must first address jurisdictional issues before addressing

the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (noting that "jurisdiction is vital only if the court proposes to issue a judgment on the merits").  Here, the Court cannot address the merits of the claims against Defendants Live Oak and First National before addressing whether it has personal jurisdiction over those defendants.

A.     **Plaintiffs have not shown the Court has personal jurisdiction under the RICO statute or the Fifth Amendment.**

Plaintiffs do not assert personal jurisdiction over Defendants Live Oak and First National through the RICO statute.  Therefore, the Court assumes personal jurisdiction does not exist on that basis.

Alternatively, to the extent the Court must *sua sponte* consider personal jurisdiction on the basis of the RICO statute, the Court concludes that statute does not establish personal jurisdiction here.  Fed. R. Civ. P. 4(k) provides that a federal court has personal jurisdiction to the extent authorized by a federal statute.  "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (internal quotation marks and citations omitted). In federal question cases "where jurisdiction is invoked based on nationwide service of process", the court must look to the due process considerations under the Fifth Amendment. *Id.* at 1318. That is, "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Peay v.*

*BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (internal quotation marks and citation omitted).  Here, when a RICO claim is brought against at least one defendant over whom the Court has personal jurisdiction, the RICO Act permits any summons to be served "nationwide" over other defendants, if the "ends of justice" so require. *Cory v. Aztec Steel Bldg., Inc.,* 468 F.3d 1226, 1230–31 (10th Cir. 2006).

Moreover, the Court must apply the Fifth Amendment due process clause "in a federal question case where jurisdiction is invoked based on nationwide service of process." *Peay,* 205 F.3d at 1212. In a federal question case, the "Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Id.* To defeat federal jurisdiction, a defendant must establish that the "chosen forum will make litigation ... gravely difficult and inconvenient" or, in other words, the forum district burdens the defendant with "constitutionally significant inconvenience." *Id.* (internal quotation marks omitted). The court looks to "non-exclusive factors in considering whether defendants have met this burden, such as (1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders." *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015).

In this personal jurisdiction analysis, district courts also consider whether Plaintiffs adequately pled a RICO claim. *Gibbs-Squires v. Urb. Settlement Servs.*, No. 14-CV-00488-MSK-CBS, 2015 WL 196217, at *4 (D. Colo. Jan. 14, 2015) (in determining whether court has personal jurisdiction as to RICO claim, district court considered whether plaintiff stated a RICO claim), *aff'd,* 623 F. App'x 917 (10th Cir. 2015) ("Plaintiffs failed to assert jurisdiction over them through an adequately pled RICO claim"); *see also Lynn v. Brown*, 803 F. Appx 156, 161 (10th Cir. 2020)

(noting failure to colorably plead RICO claim establishes lack of subject matter jurisdiction). As explained below, Plaintiffs failed to adequately plead a RICO claim. Plaintiffs (1) failed to plead allegations supporting an enterprise, and (2) failed to plead facts supporting the predicate act or racketeering activity of a RICO claim.  Moreover, Plaintiffs have not shown that the ends of justice supports exercising personal jurisdiction. Therefore, the RICO statute does not establish personal jurisdiction over Defendants Live Oak or First National.

**B.      Court lacks personal jurisdiction over Defendants Live Oak and First National under the Fourteenth Amendment minimum contacts test.**

The parties primarily focus on whether this court has personal jurisdiction under the Fourteenth Amendment minimum contacts test.  The Court assumes this test applies, and for the reasons stated below, concludes that it lacks personal jurisdiction over Defendants Live Oak and First National. Therefore, Defendants' motions to dismiss for lack of personal jurisdiction are granted, and the claims against Defendants Live Oak and First National are dismissed without prejudice.

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012).  New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 316, 48 P.3d 50, 54; *Fireman's Fund*, 703 F.3d at 492–93.  This personal jurisdiction analysis, therefore, concerns only whether the exercise of personal jurisdiction offends due process.

"Due process requires both that the defendant [1] 'purposefully established minimum contacts within the forum State' and [2] that the assertion of personal jurisdiction would comport

with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In other words, "the contacts with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *XMission*, 955 F.3d at 839–40 (internal quotations omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Yet, even if a plaintiff satisfies the minimum contacts requirement, the defendant can still defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

When personal jurisdiction is contested, the plaintiff has the burden of establishing personal jurisdiction over the defendant. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004); *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). At this stage, where a pre-trial motion to dismiss is considered by a court without an evidentiary hearing, the plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports*, 514 F.3d at 1057. The plaintiff can satisfy this burden by "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). This showing is "light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Plaintiffs appear to assert that the Court has specific jurisdiction over Defendants Live Oak and First National.[1] Due process requires that Plaintiffs establish that Defendants Live Oak and

---

[1] Plaintiffs do not appear to argue that general jurisdiction applies. Generally, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. Here, Defendants established that New Mexico is not their

First National "purposefully established minimum contacts with the forum State." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). This requires Plaintiffs to show (1) the defendants "purposefully directed [their] activities at [New Mexico] residents" and (2) Plaintiffs' injuries "arise out of the defendant's forum-related activities." *Id*. (alterations and internal quotation marks omitted). Specific jurisdiction is "premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078.

The "arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." *See XMission*, 955 F.3d at 840. Thus, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *See Ford Motor Co.*, 141 S. Ct. at 1025 (internal quotations and alterations omitted). In sum, to apply specific personal jurisdiction, the plaintiff must establish "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.*" *Dudnikov*, 514 F.3d at 1077 (emphasis in original).

The "purposefully directed" requirement is analyzed differently depending upon the cause of action. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir.2008). Here, Plaintiffs assert both tort and contract claims. "In the tort context, we often ask whether the

---

"home", while Plaintiffs did not make a prima facie case establishing that New Mexico is fairly regarded as its home. Therefore, general jurisdiction does not apply.

nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id.* (citing *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.,* 385 F.3d 1291, 1296 (10th Cir.2004)). "In all events, the shared aim of 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King,* 471 U.S. at 475).  In the context of tort claims, purposeful direction may exist when defendant engaged in "(a) an intentional action ... (b) expressly aimed at the forum state ... with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov,* 514 F.3d at 1072 (interpreting *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). It is not enough to establish that "defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state;" instead, Plaintiffs must prove "that defendants undertook intentional actions that were expressly aimed at that forum state." *Id.* at 1077.

As explained below, the Court concludes that Plaintiffs have not made a prima facie showing of personal jurisdiction over Defendants Live Oak and First National.

Plaintiffs assert that they utilized the Avance Defendants to broker several real estate loans for real estate transactions or refinancing.  None of transactions closed. This included six transactions or refinancings in New Mexico: the purchase of an RV park in South Dakota, the purchase of an RV park in Lubbock, Texas, the purchase of an RV park in Bloomfield, New Mexico, a refinance of a home in Albuquerque, a refinance of an office in Albuquerque, the purchase of an investment property in Albuquerque, and the refinance of two RV parks in Hobbs and Carlsbad, New Mexico.  Doc. 1 at ¶ 6.  Plaintiffs allege that Defendants Live Oak and First

National were potential lenders, along with several others, for certain properties. Ultimately, Defendants Live Oak and First National either declined to lend to Plaintiffs, or declined to lend for the amount necessary to buy the investment properties.  Plaintiffs assert that Defendants committed unspecified errors during the loan approval process, or failed to send them mandatory disclosures.  *Id.* at ¶ 14.  Plaintiffs assert that they utilized a New Mexico broker to seek the loans, but also allege that communications went through their broker Ryan Vance, a Texas citizen.  Doc. 1 at ¶ 2.  Plaintiffs appear to allege that Defendant Vance generally withheld the names of potential lenders, including Live Oak and First National, and Plaintiffs did not have any interaction with potential lenders.

However, there is no allegation that Defendants Live Oak or First National solicited business from anyone in New Mexico, or initiated contact with anyone in New Mexico.  Ryan Vance and his company apparently reached out to Defendants.  As noted below, the allegations generally do not establish any specific actions taken by the defendant lenders, aside from being part of a group of several potential lenders.

Plaintiffs allege that Defendant Live Oak was only involved in one transaction, the acquisition of an RV park in South Dakota.  However, Live Oak is listed as one of *several* potential lenders for that park. Doc. 1 at ¶¶ 11, 13, 14.  Plaintiffs allege that Defendant Live Oak, along with several other potential lenders, represented that the purchase of the South Dakota RV park would go through.  *Id.* at ¶¶ 16, 18.  This representation appears to have allegedly been given by Defendant Vance to Plaintiffs.  Plaintiffs do not allege that Defendant Live Oak participated in any New Mexico real estate transactions. Defendant Live Oak allegedly communicated with the broker, either a New Mexico or Texas citizen.  Plaintiffs do not allege that Defendant Live Oak initiated these communications, or had any communication with Plaintiffs.   Plaintiffs have not

shown that these communications were expressly aimed at the forum state. Plaintiffs do not describe the communications in detail, or explain how the tortious conduct was directed at New Mexico. As Defendant Live Oak explains, alleged tortious communications with a plaintiff who has a strong connection to the forum state is insufficient by itself to establish personal jurisdiction. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231–32 (10th Cir. 2020) ("Dental Dynamics fails to show Dr. Jolly had any connections with Oklahoma outside of the allegedly fraudulent misrepresentations and isolated incidents of outreach to Dental Dynamics. These communications into the forum-state are insufficient to establish Dr. Jolly "expressly aimed" his allegedly tortious misrepresentations at Oklahoma."), *citing Rockwood Select Asset Fund XI (6)-1, LLC v. Devine*, 750 F.3d 1178, 1180 (10th Cir. 2014) (holding alleged falsehoods in an opinion letter sent from an out-of-state law firm defendant to a plaintiff in the forum state failed to establish jurisdiction); *see also Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016) ("*Walden* teaches that personal jurisdiction cannot be based on interactions with a plaintiff known to bear a strong connection to the forum state." (quoting *Rockwood*, 750 F.3d at 1180)); *C5 Med. Werks*, 937 F.3d at 1324 ("[M]erely interacting with a plaintiff known to bear a strong connection to the forum state is not enough to establish jurisdiction." (internal quotation marks and citation omitted)). Moreover, Live Oak was not involved in any real estate transaction in New Mexico. Therefore, the Court concludes that Plaintiffs have not establish personal jurisdiction over Defendant Live Oak.

Similarly, Plaintiffs' threadbare allegations against First National are insufficient to establish minimum contacts, and the Court concludes that Plaintiffs have not shown that Defendant First National purposefully directed its activities to New Mexico residents. Plaintiffs assert that Defendant First National was a prospective lender, and had communications with their broker,

Ryan Vance.  Defendant First National did not reach out to Plaintiffs or their broker, and did not communicate directly with Plaintiffs.  Defendant First National did communicate with Ryan Vance, but it appears Mr. Vance is a Texas citizen. *See* Doc. 1 at 8 ¶ 2 (alleging Ryan Vance is Texas citizen); Doc. 40, Ex. 2 (listing Ryan Vance's Texas address and phone number).  In their complaint, Plaintiffs do not describe the communications sent by First National, or describe First National's participation in the failed real estate transactions, aside from being a potential lender.  To the extent Plaintiffs do describe First National's potential lending, its actions are grouped with several other potential lenders.

First National was apparently a potential lender, along with several others, for three different New Mexico properties.  Plaintiffs attempted to obtain financing for the purchase of an RV park in Bloomfield, New Mexico. However, Plaintiffs' allegations as to First Nationals' participation in that acquisition is threadbare.  Plaintiffs do not describe the purported communications by First National, or its actions in the failed transaction.  Defendant First National was also allegedly a potential lender, along with several others, for the refinancing of RV parks in Hobbs, New Mexico and Carlsbad, New Mexico.  Plaintiffs do not describe First National's involvement in that refinancing, or explain any communications or actions which purposefully availed themselves of the privilege of conducting business in New Mexico.  Plaintiffs do not expressly state that First National, rather than other defendants, sent appraisers or inspectors to the RV parks.  It is unclear how far the transaction proceeded, as multiple potential lenders were involved in the refinancing.

Plaintiffs provided e-mails between First National and Ryan Vance.  Doc. 40, Ex. 2.   In those e-mails, Ryan Vance is listed as having a Texas address and phone number.  Moreover, those

communications appear to relate to a property in Sturgis, South Dakota, a property in Lubbock, Texas, and one property in Bloomfield, New Mexico.

Moreover, Plaintiffs attached a request for a title commitment for a property in Texas. Doc. 40, Ex. 3. The request for title commitment appears to have been drafted by Ryan Vance. First National's involvement in that request for a title commitment is unclear.

Finally, Plaintiffs' do not describe the alleged injuries resulting from First National's or Live Oak's alleged tortious acts, or that their injuries arose from Defendants' contact with the forum state.

For the reasons stated above, the Court concludes that Plaintiffs have not shown that Defendant First National purposeful directed its activities to the forum state or purposefully availed itself of the privilege of conducting business in the forum state. Therefore, Plaintiffs have not established personal jurisdiction over Defendant First National.

**II.** **As to the remaining defendants, the Court dismisses the RICO claim (Count VIII) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.**

Plaintiffs argue that the defendants in this case violated the RICO statute either by violating 18 U.S.C. § 1962(c) or (d). *See* Doc. 51 at 8.[2] As explained below, the Court disagrees and concludes that Plaintiffs fail to state a RICO claim. Therefore, the RICO claim under Count VIII is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as to the remaining defendants.

18 U.S.C. § 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing]

---

[2] Plaintiffs pled the bare statutory language of RICO claims under § 1962(a) and (b), but appear to have abandoned their claims under (a) and (b) in their responses. They do not argue in their responses that Defendants violated § 1962(a) or (b). Therefore, the Court assumes that Plaintiffs are not pursuing a RICO claim under § 1962(a) or (b).

or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant (1) conducted or participated in the affairs "(2) of an enterprise (3) through a pattern (4) of racketeering activity." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016); *Tal v. Hogan,* 453 F.3d 1244, 1269 (10th Cir. 2006). RICO also has a causation element.  Under RICO's "by reason of" requirement under 18 U.S.C. § 1964(C), "to state a claim ... the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014).

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or groups of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" generally consists of the criminal offenses listed in 18 U.S.C. § 1961(1).  A "pattern" involves two or more acts, sometimes called "predicate acts," of racketeering activity. *Id.* § 1961(5).  Section 1962(d), as applied to this case, requires proof of a conspiracy to violate § 1962(c).

Here, Plaintiffs merely paraphrase the statutory language for their RICO claim, and do not assert factual allegations supporting the RICO claim.  *See* Doc. 1 at 30, ¶¶ 87-90. Plaintiffs do not plead factual allegations regarding the acts each defendant is alleged to have taken to support a RICO claim.  Plaintiffs do not allege what predicate act of racketeering Defendants allegedly committed, or factual allegations supporting the elements of that racketeering activity.  Plaintiffs also do not specify which defendant is alleged to have violated the RICO statute.  This does not satisfy the pleading requirements in Rule 8 or Rule 9(b).

Moreover, Plaintiffs have not plausibly pled a predicate act of racketeering.  In their First Amended Complaint, Plaintiffs do not identify a racketeering activity listed under section 1961(1), or assert any factual allegations supporting one of the predicate acts listed in that statute.  Plaintiffs assert in their responses to the motions to dismiss that the RICO claim is based on the negligent or intentional failure of Defendants to send mandatory disclosures to potential borrowers.  *See, e.g.,* Doc. 64 at 15; Doc. 42 at 13.[3]  But Plaintiffs do not explain how the negligent or intentional failure to provide disclosures to borrowers (here, Plaintiffs) constitutes a racketeering activity.  *See* 18 U.S.C. § 1961(1) (defining racketeering activity).   Therefore, the Court concludes that Plaintiffs have not plausibly pled a predicate act of racketeering.

Alternatively, in their responses, Plaintiffs summarily assert in one sentence that wire fraud constitutes a racketeering activity, but they do not explain how the allegations in the complaint satisfy the wire fraud elements. *See, e.g.,* Doc. 49 at 14-15; Doc. 51 at 9.  To the extent Plaintiffs argue that wire fraud is the predicate racketeering activity, they have not pled as such in their amended complaint. They do not mention wire fraud in their complaint and they do not assert factual allegations supporting the elements of wire fraud. Plaintiffs do not explain how the negligent or intentional failure of Defendants to send borrowers mandatory disclosures constitutes wire fraud.  As explained below, the Court concludes they have not plausibly pled that any of the Defendants committed the predicate racketeering act of wire fraud.

To establish the predicate act of wire fraud Plaintiffs must allege "(1) the existence of a scheme or artifice to defraud *or* obtain money or property by false pretenses, representations or

---

[3] Plaintiffs assert in their responses that the predicate act of racketeering is as follows:

> Apparently, defendant lenders do not send out mandatory disclosures to borrowers and negligently allow Defendants Advance & Vance to 'gatekeep' and arbitrarily decide what disclosures go to borrowers.  For purposes of litigation at this stage, all defendant lenders engaged in a pattern or practice of intentionally or negligently failing to provide mandatory disclosures to borrowers brought by Defendants Vance and/or Avance.

Doc. 42 at 13.

promises," and (2) the use of interstate wire, radio or television communications in furtherance of the scheme to defraud. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 892 (10th Cir.1991) (emphasis added). *See United States v. Kennedy,* 64 F.3d 1465, 1475 (10th Cir.1995).

Plaintiffs have not plausibly alleged a scheme or artifice to defraud. Actionable fraud under wire fraud consists of "(1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation… and [7] injury." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). "[A] misleading omission also may establish the intent to defraud under the mail and wire fraud statutes." *Clinton v. Sec. Benefit Life Ins. Co., 63 F.4th 1264, 1283* (10th Cir. 2023). "Failure to adequately allege any one of the [] elements is fatal to the fraud claim." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). "The particularity requirement of Rule 9(b), Federal Rules of Civil Procedure, applies to claims of mail and wire fraud" in a RICO action. *Id.*, *citing Robbins v. Wilkie,* 300 F.3d 1208, 1211 (10th Cir.2002); *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989–90 (10th Cir.1992); *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989). Thus, "a complaint alleging fraud [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus.,* 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991)). A plaintiff asserting "fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992).

Here, Plaintiffs do not explain how the failure to send out the mandatory disclosures was part of a scheme to defraud them. Rather, Plaintiffs' allegations primarily focus on the alleged

negligence of the parties, such as the belief that other parties were responsible for sending out the disclosures.  Doc. 1 at 14, ¶¶ 15, 18.  In their complaint, Plaintiffs did not mention wire fraud, or plausibly plead the elements of wire fraud pursuant to Fed. R. Civ. P. 8 or 9(b).  In their responses, Plaintiffs do not explain how the federal wire fraud elements were satisfied, or how the failure to provide mandatory disclosures constitutes wire fraud.  *See, e.g.,* Doc. 49 at 15.  Plaintiffs must plead specific facts which, if true, would establish that each predicate act was committed by the Defendants. *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006); *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  Moreover, Plaintiffs have not alleged with particularity which of the defendant lenders participated in the racketeering activity.

Moreover, Plaintiffs have not plausibly alleged a scheme or artifice for obtaining money or property. *See* 18 U.S.C. § 1343 (wire fraud is a scheme or artifice "for obtaining money or property").  To state a claim for wire fraud, Plaintiffs must "plausibly allege 'the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises.' " *George*, 833 F.3d at 1254 (citation omitted).  "[T]he central focus of the first element [of mail and wire fraud] is the existence of a scheme." *United States* v. *Kennedy*, 64 F.3d 1465, 1475 (10th Cir. 1995) (citation omitted); *see also United States* v. *Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) ("The gist of [mail and wire fraud] is a scheme to defraud and the use of interstate communications to further that scheme." (citation omitted)). Here, Plaintiffs have not alleged with particularity what, if any, money or property the Defendants obtained by false pretenses, or through a plan or pattern of conduct which was intended to deceive persons of ordinary prudence. Moreover, Plaintiffs have not plausibly alleged a scheme, *i.e.*, a plan or pattern of conduct which is intended to deceive persons of ordinary prudence.

Even assuming the Plaintiffs had plausibly alleged the Avance Defendants had committed a predicate act of racketeering (wire fraud), Plaintiffs have not argued or plausibly alleged participation in an enterprise. "The 'enterprise' element includes 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. 1961(4). Here, Plaintiffs did not plead any formal association among the Avance Defendants and the lender defendants. Moreover, Defendant Ryan Vance, his corporation, and his employee Todd Hohmann, cannot constitute an enterprise by themselves. *Bd. of Cty. Comm'rs of San Juan Cty.*, 965 F.2d at 886 ("[O]fficers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself."), *cited in George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1249 (10th Cir. 2016); *see* doc. 1 at 10 (alleging that Ryan Vance owned the Avance Group entity). Moreover, Plaintiffs have not argued or pled an association-in-fact. An association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Dugan v. State Farm Mut. Ins. Co.*, 2018 WL 1612854, at *3 (W.D. Okla. 2018). Plaintiffs have not pled factual allegations supporting these elements, or argued how an enterprise has been adequately pled in the complaint. For example, Plaintiffs do not plead a purpose of the enterprise, such as why the lenders would join together to negligently or intentionally fail to provide mandatory disclosures.

Plaintiffs have also not plausibly pled a RICO pattern. "[A] RICO pattern requires that the racketeering predicates relate to each other and amount to a threat of continued racketeering activity. No pattern exists without this continuity plus relationship." *Johnson v. Heath*, 56 F.4th

851, 858–59 (10th Cir. 2022) (internal citations and quotation marks omitted). Plaintiffs do not plead or argue a continued threat of illegal activity. *Id.*

Plaintiffs have also failed to plausibly allege causation.  Under RICO's "by reason of" requirement under 18 U.S.C. § 1964(C), "to state a claim ... the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014). Proximate causation "requires some direct relation between the injury asserted and the injurious conduct alleged." *Johnson v. Heath*, 56 F.4th 851, 870 (10th Cir. 2022) (internal quotation marks and citation omitted). "When the alleged conduct involves fraud, a direct relation can arise from the plaintiff's reliance on misrepresentations." *Id., citing CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014).  Here, Plaintiffs' injuries are unclear, and Plaintiffs have failed to plausibly allege how the alleged racketeering activity, failing to send out mandatory disclosures, caused their injuries.

Plaintiffs also allege a violation of 18 U.S.C. § 1962(d). That subsection makes it illegal "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Plaintiffs' § 1962(d) claim also fails. By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d). *See United States v. Hampton,* 786 F.2d 977, 978 (10th Cir.1986) ("The object of a RICO conspiracy must be to violate a substantive RICO provision."); *Schroder v. Volcker,* 864 F.2d 97, 98 (10th Cir.1988). "If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006), *citing Condict v. Condict,* 826 F.2d 923, 927 (10th Cir.1987)

("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient.").

Here, because Plaintiffs failed to plead a plausible § 1962(c) claim, they also failed to plead a conspiracy claim under § 1962(d).  *Tal*, 453 F.3d at 1270, *citing Condict v. Condict,* 826 F.2d 923, 927 (10th Cir.1987).  Moreover, Plaintiffs have not plausibly alleged a conspiracy.

For the reasons stated above, the Court concludes that Plaintiffs failed to state a RICO claim (Count VIII) pursuant to Fed. R. Civ. P. 12(b)(6).  The RICO claim is dismissed as to the remaining defendants.

## III.   Court declines to exercise supplemental jurisdiction over remaining state law claims.

Defendants removed this case on the basis of Federal Question jurisdiction, and no party has asserted diversity jurisdiction.  Because the Court dismissed the only federal claim, and it appears that the Court lacks original jurisdiction over the remaining state law claims in this case, the Court, in its discretion, declines to exercise supplemental jurisdiction.

Defendants removed this case solely on the basis of federal question jurisdiction.  The Notice of Removal only identified one federal claim, the RICO claim. *See* Doc. 1 at 3.  The Notice also expressly noted that the Court had supplemental jurisdiction over the remaining claims. Doc. 1 at 3, n.3.  After dismissal of the RICO claim, the Court sees no other basis for federal jurisdiction. Defendants did not identify any other basis for federal jurisdiction.  *See* Doc. 1.  Defendants characterize Plaintiffs' state law negligence claim as relying upon federal statutes to confer a duty of care.  However, no party has asserted that federal question jurisdiction exists on that basis.  *See* Doc. 1. This state law negligence claim does not confer federal question jurisdiction. *See Gregg v. Rodriguez*, No. 23-1031-JWB, 2023 WL 4053590, at *5 (D. Kan. June 16, 2023) ("[I]t is well

settled that a claim for a violation of state law based upon a breach of a duty created by federal

law does not present a substantial federal question for purposes of federal question jurisdiction."),

*quoting Kurz v. Fid. Mgmt. & Rsch. Co.*, No. 07-CV-709-JPG, 2007 WL 3231423, at *4 (S.D. Ill.

Oct. 30, 2007); *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 816, 106 S. Ct. 3229, 3236,

92 L. Ed. 2d 650 (1986) (rejecting argument that element of state law claim that a federal statute

was violated creates federal question jurisdiction).   Moreover, the Court disagrees with the

Defendants' characterization of the state law negligence claim, as pled *in the First Amended*

*Complaint*, as one primarily premised on the violation of federal statutes.   Rather, as pled in the

First Amended Complaint, the negligence the duty of care arises primarily from state common law

or state statutes.   *See* Doc. 1 at 22-26.   The claim as pled appears to be primarily premised on a

duty of care arising from NMSA § 58-21B-20.   *Id.*   Moreover, Plaintiffs also pled that a duty of

care arose from state common law. *Id.*[4]

---

[4] Even assuming Plaintiffs in part argued in their responses that a duty of care may arise from
federal statutes, the Court finds that a federal issue is not necessarily raised or substantial, and the
federal issue, if any, can be resolved by the state courts without disrupting federal-state balance.
Plaintiffs' state law negligence claim does not "turn on substantial questions of federal law."
*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162
L.Ed.2d 257 (2005). Under the *Grable* doctrine, "a federal court [is] able to hear claims recognized
under state law that nonetheless turn on substantial questions of federal law, and thus justify resort
to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."
*Grable*, 545 U.S. at 312. That is to say, "federal jurisdiction over a state law claim will lie if a
federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of
resolution in federal court without disrupting the federal-state balance approved by Congress."
*Gunn v. Minton*, 568 U.S. 251, 258 (2013).   Here, any "federal interest is not critical enough to
trigger substantial-question jurisdiction because… whatever federal issues exist do not
fundamentally change the state tort nature of the action."   *Bd. of Cnty. Commissioners of Boulder
Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1270 (10th Cir. 2022), *cert. denied,* 143 S.
Ct. 1795, 215 L. Ed. 2d 678 (2023) (internal quotation marks and citation omitted).   Moreover, a
duty of care here may arise from state statutes and state common law, and a decision need not be
reached on whether a duty of care arises from federal statutes.

Moreover, nothing in the record suggests that diversity jurisdiction might exist. No party has suggested that diversity jurisdiction exists.  Rather, the notice of removal expressly states the court has supplemental jurisdiction over the remaining claims. Doc. 1 at 3, n.3.  Defendants did not remove on the basis of diversity jurisdiction. Rather, the parties proceeded in state court on the assumption that diversity jurisdiction did not exist, and did not remove until a federal claim was added in an amended complaint. At minimum, Plaintiff Gene Chavez and Defendant Todd Hohmann are alleged to be citizens of New Mexico.  Additionally, Defendants appear to assert that Plaintiff Chavez is a majority shareholder of the plaintiff LLCs.  *See* Doc. 47, Ex. 1 at 89 (Gene Chavez is "majority shareholder" of the LLC plaintiffs). LLCs take the citizenship of its members.  *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015). It appears at least one member, Mr. Chavez, is a New Mexico citizen. Therefore, it appears that complete diversity does not exist.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).  Moreover,

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Amer. v. Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 (footnote omitted).

Here, the Court dismissed the only federal claim, and the parties do not argue that diversity jurisdiction exists.  *See* Doc. 1.  Rather, they expressly assert that the Court has supplemental

jurisdiction over these state law claims.  Doc. 1 at 3 n.3.  The Court, in its discretion, declines to exercise supplemental jurisdiction over the state law claims.  § 1367(c)(3).

When declining to exercise supplemental jurisdiction, a district court may dismiss the state law claims without prejudice or remand the claims to state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988). Because this case was removed to this court from state court, the Court finds remand of the state law claims, rather than dismissal, appropriate.

**IV.    Plaintiffs have not provided adequate grounds to grant leave to amend.**

In one sentence, Plaintiffs request leave to amend should the Court decide to dismiss claims. *see, e.g.,* Doc. 42 at 14-15 ("In the event that the Amended complaint filed in state court does not adhere to the proper requirements of this Honorable Court, Plaintiffs would gladly draft a Second Amended Complaint with attachments to ensure specificity."); Doc. 49 at 19 (same); *see also* Doc. 49 at 18. Plaintiffs do not provide any argument explaining why the amendments should be granted, or what would be in the amendment.

Here, no motion to amend was filed, no proposed amended complaint was attached[5], and no proffer of the proposed amendments was provided in Plaintiffs' responses to the motions to dismiss. "The filing of a motion to dismiss gives the plaintiff notice that his complaint is potentially deficient and the opportunity to amend his complaint to cure the alleged deficiencies." *Ostler v. Buhler*, 30 F.3d 142 (10th Cir. 1994). *See also Hall,* 935 F.2d at 1109-1100 ("dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to

---

[5] This district's local civil rule 15.1 requires that a proposed complaint accompany a motion for leave to amend.  D.N.M.LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend.").  This rule is beneficial to both the parties and the district court, ensuring that information useful or necessary to the Court's decision-making is submitted.

amend his complaint…").  The Tenth Circuit has "long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282–83 (10th Cir. 2021); *see also Albers v. Bd. Of Cnty Com'rs of Jefferson Cnty., Colo,* 771 F.3d 697, 706 (10th Cir. 2014); *Glenn v. First National Bank in Grand Junction,* 868 F.2d 368, 369–72 (10th Cir. 1989). Here, the motions to dismiss provided adequate notice to Plaintiffs of the alleged deficiencies in their complaint, and the opportunity ot file a motion to amend.  Plaintiffs did not take advantage of that opportunity.

Instead, Plaintiffs summarily requested amendment in their responses to the motions to dismiss.  "Such 'shot[s] in the dark' do not request 'an order contemplated under the rules,' do not state any particular grounds for the request, and lack basis. *Brooks*, 985 F.3d at 1282-83, *quoting in part Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 370–71 (10th Cir. 1989) ("A naked request for leave to amend asked for as alternative relief when a party has the unexercised right to amend is not sufficient.").  Moreover, "[a] court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.,* 181 F.3d 1180, 1186 (10th Cir. 1999) ("a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it"); *see also Warnick*, 895 F.3d at 755 (finding no abuse of discretion where a plaintiff merely suggested she should be allowed to amend and violated D. Kan. Local Rule 15.1).  This is not a sanction or sanctions analysis, but merely an acknowledgement of what a party needs to do to put an issue before a district court.  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282–83 (10th Cir. 2021).

Therefore, the Court concludes that leave to amend is not appropriate.  *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1118 (10th Cir. 2015) (in denying leave to amend, "the district

court was not required to give an explanation for dismissing the complaint with prejudice when plaintiff's request for leave to amend amounted to a single sentence at the end of his memorandum in opposition to the motion for summary judgment.").

## V.    Motion for leave to file late reply is denied as moot.

Defendant United Wholesale Mortgage filed a motion for leave to file a late reply, and attached the late reply to the motion to dismiss.  *See* Doc. 78 (motion); Doc. 78-1 (proposed late reply).  Defendant UW has asserted that the Court should consider the late reply under excusable neglect.  The Court has reviewed the proposed late reply (Doc. 78-1), and concludes that the reply would not have altered the Court's decision or reasoning as set forth in this opinion.  It also overlaps to substantial degree with the seven other replies it has read in this case.  Therefore, the motion is denied as moot.

## VI.   Court declines to award attorneys' fees at this time.

Some Defendants summarily request costs and attorneys' fees in their motions.  They generally do not set forth the basis for their entitlement to costs and fees, but appear to request fees under Rule 11.  To the extent Defendants summarily request Rule 11 sanctions, they have not provided a basis for those sanctions, and upon review of the record, the Court does not *sua sponte* see one. Therefore, the Court declines to rule on the appropriateness of fees or costs in this opinion.

### CONCLUSION

Defendants Live Oak Banking Company and First National Bank of Coffee County are dismissed without prejudice for lack of personal jurisdiction.  As to the remaining Defendants, the Court dismisses the federal RICO claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Finally, the Court declines to exercise supplemental jurisdiction over the remaining state law

claims, and remands those claims to the Second Judicial District Court, Bernalillo County, New Mexico.

**IT IS THEREFORE ORDERED** that the eight motions to dismiss (Docs. 10, 12, 23, 25, 26, 36, 46, 63) are **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendant United Wholesale Mortgage's Motion for leave to file late reply (Doc. 78) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the claims against Defendants Live Oak and First National Bank of Coffee County are dismissed without prejudice for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that the federal RICO claim (Count VIII) is dismissed as to the remaining defendants for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**IT IS FINALLY ORDERED** that the Court declines to exercise supplemental jurisdiction over the remaining state law claims against the remaining defendants, and remands those state law claims to the Second Judicial District, Bernalillo County, New Mexico.  The Clerk of Court is directed to take the necessary actions to remand this case.

_____
UNITED STATES DISTRICT JUDGE

27